UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

                Applicant,

      v.

GOOGLE LLC,

                Proposed Subpoenaed Party.

Case No.  23-mc-80149-PHK

**MEMORANDUM OF DECISION RE ORDER GRANTING *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

Re: Dkt. No. 10

## INTRODUCTION

On July 3, 2023, this Court issued an Order granting the *ex parte* application of the United States of America ("USA") for an order pursuant to 28 U.S.C. § 1782 authorizing service of a subpoena for documents on Google LLC ("Google").  [Dkt. 10; *see* Dkt. 1].  While the Court's July 3rd Order discusses the procedural bases for granting the USA's application, this Memorandum explains the legal reasoning for the decision.

## BACKGROUND

### I.     PROCEDURAL BACKGROUND

On January 3, 2023, the National Court Administration of the Republic of Korea (hereinafter, "the South Korean Court") issued a Letter of Request under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555 ("Hague Evidence Convention"), requesting international judicial assistance to obtain certain evidence from Google in connection with a civil action currently pending before the Gunsan

1    Branch of Jeonju District Court 68 in Jeollabuk-do, Republic of Korea, captioned *Matter of*

2    *Seongbeom*, Foreign Reference Number 2022-F-3852.  [Dkt. 1-2 at 1-2, 4-12].  In its Letter of

3    Request, the South Korean Court seeks any information or documents that Google has regarding

4    "[t]he personal information (Name, Gender, Phone Number, Date of Birth, etc.) of the

5    [individual(s)] who signed up for your company and used gonggoncha@gmail.com between

6    February 1, 2022 and February 28, 2022."  *Id.* at 10.  The Letter of Request was sent to the United

7    States Department of Justice's Office of International Judicial Assistance ("OIJA") in Washington,

8    D.C., which serves as the USA's Central Authority for receiving letters of request under the

9    Hague Evidence Convention.  *Id.* at 7; *see* Yanbei Andrea Wang, *Exporting American Discovery*,

10   87 U. CHI. L. REV. 2089, 2104 (2020) (discussing procedures for handling requests for

11   international judicial assistance under the Hague Evidence Convention).  The Letter of Request

12   was then transmitted to the United States Attorney's Office for the Northern District of California,

13   in accordance with 28 C.F.R. § 0.49(c).  [Dkt. 1-2 at 2, 4-5].

14          On January 23, 2023, Assistant United States Attorney Andrew S. Mainardi ("AUSA

15   Mainardi"), on behalf of the USA, transmitted the Letter of Request to Google's legal department

16   in Mountain View, California, in an effort to obtain the information sought by the South Korean

17   Court voluntarily from Google.  *Id.*  Google's legal counsel, in response, informed AUSA

18   Mainardi that Google would provide the information sought by the South Korean Court only

19   pursuant to a United States federal court subpoena.  *Id.* at 2.  Accordingly, to execute the South

20   Korean Court's request for international judicial assistance under the Hague Evidence Convention,

21   the USA sought authority from this Court under 28 U.S.C. § 1782 to issue the subject subpoena.

22   [Dkt. 1].

23   **II.     THE UNDERLYING FOREIGN PROCEEDING AND THE § 1782 APPLICATION**

24          The underlying South Korean case captioned *Matter of Seongbeom*, Foreign Reference

25   Number 2022-F-3852, is a civil proceeding in which the plaintiff, Ham Seongbeom, alleges that

26   the defendant, whose identity is unknown, conveyed false information regarding the plaintiff's

27   sexual history by means of a Google messenger account to nonparty Yoon Jihye less than ten days

28   before the plaintiff's wedding to Yoon Jihye.  [Dkt. 1-2 at 10-11].  The plaintiff claims "mental

United States District Court
Northern District of California

2

1    damage" resulting from the defendant's alleged misconduct.  *Id.*  The South Korean Court, on

2    behalf of the plaintiff's attorney, requests information regarding the defendant's identity from

3    Google.  *Id.* at 8-11.  The Letter of Request specifically seeks any information or documents that

4    Google has regarding "[t]he personal information (Name, Gender, Phone Number, Date of Birth,

5    etc.) of the [individual(s)] who signed up for your company and used gonggoncha@gmail.com

6    between February 1, 2022 and February 28, 2022."  *Id.* at 4, 10.  Google requires a subpoena to

7    provide the requested information.  *Id.* at 2.

8         The USA filed its § 1782 application on May 23, 2023.  [Dkt. 1].  In its supporting

9    memorandum, the USA asks the Court for an order appointing AUSA Mainardi as Commissioner

10   for the purpose of issuing the requested subpoena to Google to execute the Letter of Request.

11   [Dkt. 1-1 at 1-2].  The USA provided a copy of the proposed subpoena with its application.  [Dkt.

12   1-2 at 21-23].

13        On May 26, 2023, this Court issued an Order instructing the USA to serve a copy of the

14   application and that Order on Google.  [Dkt. 5].  The May 26th Order set a deadline for Google to

15   consent or decline Magistrate Judge jurisdiction in this matter.  *Id.*  The USA previously

16   consented, and on June 27, 2023, Google also consented to Magistrate Judge jurisdiction in this

17   matter.  [Dkts. 4, 8].  Subsequently, on June 30, 2023, Google filed a response to the USA's

18   application, stating that Google "does not oppose issuance of the subpoena, but it reserves all

19   rights and objections with respect to the subpoena."  [Dkt. 9 at 2].  On July 3, 2023, this Court

20   issued its Order granting the § 1782 application.  [Dkt. 10].

                                                **DISCUSSION**

21

22        While the Court's July 3rd Order analyzed the procedural and substantive issues leading to

23   granting the requested § 1782 application, the Court sets forth herein further detailed discussion of

24   the legal issues raised by the USA's application and the unique international discovery doctrines

25   raised by the application.  In sum, the USA's § 1782 application seeks an order appointing as

26   Commissioner AUSA Mainardi to serve upon Google a subpoena for the information requested by

27   the South Korean Court in its Letter of Request under the Hague Evidence Convention.  [Dkt. 1-1

28   at 1-2].  The Court first considers whether it has the authority to issue the subpoena and then

United States District Court
Northern District of California

                                                       3

1   determines whether discretionary factors favor its issuance.

2   **I.      JURISDICTION**

3           As a threshold matter, this Court has jurisdiction to hear and decide the § 1782 application

4   because the USA and Google have both consented to Magistrate Judge jurisdiction.  *See* 28 U.S.C.

5   § 636(c); *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 808 (9th Cir. 2022); *Williams v.*

6   *King*, 875 F.3d 500, 500 (9th Cir. 2017).

7           Foreign tribunals and parties may pursue international judicial assistance in the United

8   States through diplomatic channels, according to international law, or under federal or state

9   statutes.  Eileen P. McCarthy, *A Proposed Uniform Standard for U.S. Courts in Granting Requests*

10  *for International Judicial Assistance*, 15 FORDHAM INT'L L. J. 772, 775 (1992).  Invoked here by

11  the South Korean Court, the Hague Evidence Convention is a multilateral treaty that "prescribes

12  certain procedures by which the judicial authority in one contracting state may request evidence

13  located in another contracting state."  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct.*

14  *for the S. Dist. of Iowa*, 482 U.S. 522, 524 (1987); *see* Hague Convention on the Taking of

15  Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T.

16  2555, T.I.A.S. No. 7444, 847 U.N.T.S. 231.  The Hague Evidence Convention affords each

17  signatory nation the use of the judicial process of other signatory nations where such assistance is

18  needed in civil or commercial matters "to facilitate the transmission and execution of Letters of

19  Request and to further the accommodation of the different methods which they use for this

20  purpose."  Hague Evidence Convention at pmbl.

21          The USA and the Republic of Korea are both signatories to the Hague Evidence

22  Convention.  *See* Hague Conference on Private International Law, Status Table for the Convention

23  of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, available at

24  https://www.hcch.net/en/instruments/conventions/status-table/?cid=82 (last visited August 29,

25  2023).  As a treaty ratified and acceded to by the United States, *Aerospatiale*, 482 U.S. at 524 &

26  n.1, the Hague Evidence Convention is "the law of this land," on an equal footing with acts of

27  Congress, and binding on the courts.  *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155,

28

United States District Court
Northern District of California

4

167 (1999); *see also State of Mo. v. Holland*, 252 U.S. 416, 434 (1920); U.S. Const. art. VI cl. 2.

Article 9 of the Hague Evidence Convention states that "[t]he judicial authority which executes a Letter of Request shall apply its own law as to the methods and procedures to be followed." In the United States, 28 U.S.C. § 1782 provides one such procedure. *Aerospatiale*, 482 U.S. at 529-30 & n.13; *see also* Tony Abdollahi, *The Hague Convention: A Medium for International Discovery*, 40 N.C. J. INT'L L. & COM. REGUL. 771, 799-800 (2014) ("[A] foreign litigant may proceed under section 1782, the Hague Convention, or both."); Walter B. Stahr, *Discovery Under 28 U.S.C. § 1782 for Foreign and International Proceedings*, 38 VA. J. INT'L L. 597, 599 & n.7 (1990) (discussing the interplay between the Hague Evidence Convention and § 1782).

## II.   STATUTORY REQUIREMENTS

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). The statute reads, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

"Section 1782's statutory language has been distilled to permit district courts to authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2)

1    the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the

2    application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov*

3    *v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citing 28 U.S.C. § 1782(a)); *accord Intel*, 542

4    U.S. at 246.

5         **A.    Residency of Discovery Target in the Northern District of California**

6              The Court finds that the USA's application satisfies each of the threshold statutory

7    requirements of § 1782.  The statute first requires that the person from whom discovery is sought

8    "resides or is found" in the district of the district court where the application is made.  28 U.S.C.

9    § 1782(a); *Khrapunov*, 931 F.3d at 925.  A business entity's residency for the purpose of § 1782 is

10   "where the business is incorporated, is headquartered, or where it has a principal place of

11   business."  *In re Todo,* No. 5:22-mc-80248-EJD, 2022 WL 4775893, at *2 (N.D. Cal. Sept. 30,

12   2022) (collecting cases).

13             Here, Google's headquarters are in Mountain View, California, which is located within the

14   geographic boundaries of the Northern District of California.  *See* bizfile Online, Cal. Sec'y of

15   State, https://bizfileonline.sos.ca.gov/search/business (search for "Google LLC" or file no.

16   201727810678) (last visited on August 1, 2023) (Google's "principal address" in Mountain View);

17   Contact Us, About Google, https://www.google.com/contact/ (last visited on August 1, 2023)

18   ("Google HQ" in Mountain View); *see also* Fed. R. Evid. 201(b)(2) ("The court may judicially

19   notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily

20   determined from sources whose accuracy cannot reasonably be questioned."); *Minor v. FedEx*

21   *Office & Print Servs.*, 78 F. Supp. 3d 1021, 1028 (N.D. Cal. 2015) (taking judicial notice of record

22   of administrative agencies and publicly accessible websites).  Accordingly, the first statutory

23   requirement is met.  *See In re Hattori*, No. 21-mc-80236-TSH, 2021 WL 4804375, at *3 (N.D.

24   Cal. Oct. 14, 2021) ("Applicant's request satisfies the statutory requirements of § 1782.  First,

25   Google can be found in this district because its principal office is located in Mountain View,

26   California."); *In re Med. Inc. Ass'n Takeuchi Dental Clinic*, No. 5:22-mc-80200-EJD, 2022 WL

27   10177653, at *2 (N.D. Cal. Oct. 17, 2022) (finding Google met residency requirement under

28   Section 1782(a) due to headquarters and principal location in Mountain View).

United States District Court
Northern District of California

### B.    Discovery Sought is for Use in a Foreign Tribunal

The statute next requires that the discovery sought be "for use in a proceeding before a foreign tribunal."  28 U.S.C. § 1782(a); *Khrapunov*, 931 F.3d at 925.  To be "for use" in a foreign proceeding, the information sought must be relevant.  *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018).  "The party issuing the subpoena has the burden of demonstrating the relevance of the information sought."  *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-MC-80150-JSC, 2016 WL 5930275, at *3 (N.D. Cal. Oct. 12, 2016).  Here, the South Korean Court seeks discovery for use in a civil action pending in that court, *Matter of Seongbeom*, Foreign Reference Number 2022-F-3852, venued in the Gunsan Branch of Jeonju District Court 68 in Jeollabuk-do, Republic of Korea.  [Dkt. 1-2 at ¶ 3].  Thus, the second statutory factor is also met. *See In re Request for Jud. Assistance from Seoul Cen. Dist. Ct.*, No. 23-mc-80016-BLF, 2023 WL 2394545, at *3 (N.D. Cal. Mar. 7, 2023) (finding the second statutory factor met where discovery was sought for use in "a civil proceeding in a foreign tribunal—the Seoul Central District Court").

### C.    Discovery Request is Made by a Foreign Tribunal

Section 1782 finally requires that the discovery request be made by a foreign tribunal or interested party.  28 U.S.C. § 1782(a); *Khrapunov*, 931 F.3d at 925.  Here, the South Korean Court issued its Letter of Request to the OIJA, the USA's Central Authority for receiving letters of request under the Hague Evidence Convention, which resulted in the instant § 1782 application. [Dkt. 1-2 at 7].  The South Korean Court is clearly a foreign tribunal.  *Id*.  Thus, the third statutory requirement is satisfied.  *See In re Request for Int'l Jud. Assistance from the Nat'l Ct. Admin. of the Rep. of Korea*, No. C15-80069 MISC LB, 2015 WL 1064790, at *2 (N.D. Cal. Mar. 11, 2015) (finding the third statutory requirement met where "the request was made by the National Court Administration of the Republic of Korea, a foreign tribunal").

Accordingly, the Court finds that it has the authority to grant the relief sought by the USA in its § 1782 application.  *Khrapunov*, 931 F.3d at 925.

## III.    THE COURT'S DISCRETION TO AUTHORIZE THE REQUESTED DISCOVERY

"[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."  *Intel*, 542 U.S. at 264 (citation omitted).  Even where the minimum

1    statutory requirements are met, a district court has discretion whether or not to authorize discovery

2    under § 1782. *Id.* at 260-61; *see Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d

3    1075, 1078 (9th Cir. 2002) ("Congress gave the federal district courts broad discretion to

4    determine whether, and to what extent, to honor a request for assistance under 28 U.S.C.

5    § 1782.").

6         The language of § 1782 itself does not provide specific guidance to district courts in

7    exercising discretion under the statute. *United States v. Sealed 1, Letter of Request for Legal

8    Assistance from the Deputy Prosecutor Gen. of the Russian Fed'n*, 235 F.3d 1200, 1206 (9th Cir.

9    2000). The seminal case exploring the parameters of § 1782 is *Intel Corp. v. Advanced Micro

10   Devices, Inc.*, 542 U.S. 241 (2004). In *Intel*, the Supreme Court delineated four nonexclusive

11   factors that a district court should consider in determining whether or not to exercise its discretion

12   under § 1782. *Id.* at 264-65. These discretionary factors include: (1) whether the "person from

13   whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign

14   tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

15   government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether

16   the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other

17   policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive

18   or burdensome." *Id.*

19        "Although the Court individually analyzes each discretionary factor, they are not stand-

20   alone categorical imperatives but rather involve overlapping considerations, which are considered

21   collectively by the [C]ourt." *In re Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203-MEJ, 2016

22   WL 6474224, at *4 (N.D. Cal. Nov. 2, 2016) (quoting *In re Action & Prot. Found.*, No. C 14-

23   80076 MISC EMC (LB), 2014 WL 2795832, at *5 (N.D. Cal. June 19, 2014)) (internal quotation

24   marks and alteration omitted). In evaluating a § 1782 application, the Court is not required to

25   "address explicitly" each discretionary factor (nor even apparently issue a written order). *Akebia

26   Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015) (citing *Sealed 1*, 235

27   F.3d at 1206). This Court's discretion is to be exercised in view of § 1782's twin aims: "providing

28   efficient assistance to participants in international litigation and encouraging foreign countries by

United States District Court
Northern District of California

8

1    example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252; *see also ZF Auto. US,*

2    *Inc. v. Luxshare, Ltd.*, --- U.S. ----, 142 S. Ct. 2078, 2088, 213 L.Ed.2d 163 (2022) ("[T]he

3    animating purpose of § 1782 is comity: Permitting federal courts to assist foreign and international

4    governmental bodies promotes respect for foreign governments and encourages reciprocal

5    assistance.").

6    The Court finds that each of the four discretionary factors set forth above supports the

7    granting of the instant *ex parte* application.

8    ### A.    Whether the Person from Whom Discovery is Sought is a Party to the Foreign
    Proceeding

9

10   The first discretionary factor asks the Court to consider whether the application seeks

11   discovery from participants in the foreign proceeding. *Intel*, 542 U.S. at 247. "[W]hen the person

12   from whom discovery is sought is a participant in the foreign proceeding[,] . . . the need for

13   § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a

14   nonparticipant in the matter arising abroad." *Id.* at 264. This is because "[a] foreign tribunal has

15   jurisdiction over those appearing before it and can itself order them to produce evidence." *Id.* By

16   contrast, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's

17   jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable

18   absent § 1782(a) aid." *Id.*

19   Here, Google is not a party to the proceedings in South Korea. [Dkt. 1-1 at 5].

20   Accordingly, this factor weighs in favor of granting the USA's application. *See In re TPK Touch*

21   *Sols. (Xiamen) Inc.*, No. 16-mc-80193-DMR, 2016 WL 6804600, at *3 (N.D. Cal. Nov. 17, 2016)

22   (finding the first discretionary factor to weigh in favor of granting the § 1782 application where

23   the proposed subpoenaed party, HTC, was not a party to the foreign proceedings in China).

24   ### B.    The Nature of the Foreign Tribunal, the Character of the Proceedings Underway
    Abroad, and the Receptivity of the Tribunal to U.S. Judicial Assistance

25

26   The second discretionary factor asks the Court to consider "the nature of the foreign

27   tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

28   government or the court or agency abroad to U.S. federal court judicial assistance." *Intel*, 542

United States District Court
Northern District of California

9

U.S. at 264. This factor "focuses on whether the foreign tribunal is willing to consider the information sought." *In re Will Co.*, No. 21-mc-80211-JCS, 2021 WL 5322653, at *3 (N.D. Cal. Nov. 16, 2021) (quoting *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 14, 2016)). "Where there is no evidence suggesting that foreign courts would be unreceptive to the requested discovery, the second discretionary factor weighs in favor of the application." *Id.* (citing *In re Med. Corp. H&S*, No. 19-mc-80107-SVK, 2019 WL 2299953, at *3 (N.D. Cal. May 30, 2019)).

Indeed, this factor weighs in favor of discovery unless the foreign tribunal in question has expressly made it clear that it would not accept the evidence. *Raiffeinsenbank*, 2016 WL 6474224, at *5 (stating that, under this factor, "courts look for authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782"). A district court's ability to order discovery under § 1782 is not predicated on the discoverability or admissibility of the evidence sought in that foreign tribunal. *See Intel*, 542 U.S. at 260. Thus, this Court need not determine whether the information applicant seeks is admissible in the foreign jurisdiction. *In re Seoul Dist. Crim. Ct.*, 555 F.2d 270, 723 (9th Cir. 1977). Rather, in the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782, this discretionary factor tends to support authorizing the requested discovery. *See, e.g., Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019) (citation omitted); *In re Med. Corp. H&S*, No. 19-mc-80107-SVK, 2019 WL 2299953, at *3 ("In the absence of evidence that Japanese courts would object to MCHS's discovery of the information sought in the subpoena, or that they object more generally to the judicial assistance of U.S. federal courts, the Court concludes that this factor weighs in favor of authorizing service of the subpoena.").

In this case, the foreign tribunal is clearly receptive to judicial assistance, as the USA's application on its behalf here resulted from the Letter of Request submitted to the USA's Central Authority to receive such requests by the South Korean Court itself. [Dkt. 1-2 at 7-10]. Therefore, the second discretionary factor weighs in favor of granting the USA's application. *See In re Request for Int'l Jud. Assistance from 19th Civil Ct. of First Instance Istanbul, Turkey*, No. 22-mc-80279-JSC, 2023 WL 420787, at *3 (N.D. Cal. Jan. 26, 2023) ("[T]hat a Turkish court

1   requests the information indicates it is receptive to assistance [under § 1782].").

2       **C.**    **Circumvention of the Foreign Court's Proof-Gathering Restrictions or Other**
3                   **Policies of the Foreign Court or of the United States**

4         The third discretionary factor asks the Court to consider whether the request "conceals an

5   attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or

6   the United States." *Intel*, 542 U.S. at 265. "A perception that an applicant has 'side-stepped' less-

7   than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's

8   analysis." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 183944,

9   at *3 (N.D. Cal. Jan. 17, 2013) (citing *In re Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 107-08

10  (D.D.C. 2010)). Additionally, the perception that an applicant has immediately resorted to § 1782,

11  bypassing the foreign court's proof-gathering, can weigh against discovery. *Id.* (citation omitted).

12        On the other hand, absence of evidence of attempted circumvention of the foreign tribunal's

13  proof-gathering procedures weighs in favor of an application under § 1782. *See, e.g.*, *In re Google,*

14  *Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *2 (N.D. Cal. Dec. 15, 2014); *In re Eurasian*

15  *Nat. Res. Corp. Ltd.*, No. 18-mc-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018); *In*

16  *re Honda*, No. 21-mc-80167-VKD, 2021 WL 3173210, at *4 (N.D. Cal. July 27, 2021).

17        Here, the fact that the discovery request was initiated by the South Korean Court (rather

18  than a private litigant) strongly suggests that the request is not an attempt to circumvent the

19  Republic of Korea's proof-gathering restrictions. *See In re Letter Rogatory—Request for Int'l*

20  *Jud. Assistance from the Harju Country Ct. in Est. Petition of Lyoness Eesi OÜ*, No. 17-mc-

21  80044-MEJ, 2017 WL 1436096, at *3 (N.D. Cal. Apr. 24, 2017) ("Where a foreign court has

22  requested the information there is a presumption that the application is not an attempt to

23  circumvent foreign proof-gathering procedure.") (collecting cases). The Court finds nothing in the

24  record suggesting that the instant *ex parte* application is an attempt to bypass proper proof-

25  gathering procedures or any other discovery or disclosure-related policies of the Republic of

26  Korea. *Intel*, 542 U.S. at 264-65; *see In re Anahara*, No. 22-mc-80063-JCS, 2022 WL 783896

27  (N.D. Cal. Mar. 15, 2022) ("Absence of evidence of attempted circumvention weighs in favor of

28  an application.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In its evaluation of the third discretionary factor, the Court also must consider the extent to

2  which the application conceals an attempt to circumvent any policies of the United States. *Intel*,

3  542 U.S. at 265.  The Court notes that the instant application seeks to unmask an anonymous

4  online speaker and subject them to legal action for their speech.  At least two courts within this

5  District have suggested that such requests may raise First Amendment concerns.  *See In re*

6  *Planning & Devel. of Educ., Inc.*, No. 21-mc-80242-JCS, 2022 WL 228307, at *4 n.3 (N.D. Cal.

7  Jan. 26, 2022) (positing that the third discretionary factor "may [] weigh against granting an

8  application that conceals an attempt to contravene the First Amendment's purpose without

9  justification[,]" and noting that "[e]ven where the speakers appear to be foreign citizens outside

10  U.S. territory who do not possess rights under the U.S. Constitution, the principles underlying the

11  First Amendment may counsel a court of the United States against exercising its discretion to aid

12  in punishing speech that would be protected in this country"); *In re Tagami*, No. 21-mc-80153-

13  JCS, 2021 WL 5322711, at *3 n.1 (N.D. Cal. Nov. 16, 2021) (same).

14    It is well-settled that United States citizens, whether inside or outside of United States

15  territory, are protected by the First Amendment.  *In re Takada*, No. 22-mc-80221-VKD, 2023 WL

16  1442844, at *3 (N.D. Cal. Feb. 1, 2023) (citing *Agency for Int'l Dev. v. Alliance for Open Soc'y*

17  *Int'l, Inc.*, 570 U.S. 205 (2013)).  Foreign citizens who are outside United States territory, by

18  contrast, do not possess any rights under the United States Constitution. *Zuru, Inc. v. Glassdoor,*

19  *Inc.*, 614 F. Supp. 3d 697, 706 (N.D. Cal. 2022) (quoting *Agency for Int'l Dev. v. Alliance for*

20  *Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020)).  From the materials describing the substance

21  of the dispute in the South Korean Court, involving allegedly libelous, defamatory, or slanderous

22  statements made about the personal sexual history of a resident of South Korea immediately prior

23  to their wedding, the Court finds that it is reasonably probable that the person involved in making

24  those statements anonymously is also a resident if not citizen of South Korea.  Certainly, there is

25  nothing in the record to suggest that the ultimate source of the statements is a U.S. citizen, and

26  thus, First Amendment rights and policies would not even apply if, as likely, that person is a South

27  Korean citizen.

28    The Court finds persuasive several recent opinions concluding that, where the record does

12

1   not indicate that anonymous speakers are entitled to First Amendment protections, U.S. free-

2   speech principles should not be determinative factors in a district court's evaluation of a § 1782

3   application.  *See hey, Inc. v. Twitter, Inc.*, No. 22-mc-80035-DMR, 2023 WL 3874022, at *7-8

4   (N.D. Cal. June 6, 2023) (holding third discretionary factor did not weigh against granting § 1782

5   application seeking the identity of anonymous speaker, where there was no evidence indicating

6   that the speaker was entitled to First Amendment protections); *Takagi v. Twitter, Inc.*, No. 22-mc-

7   80240-VKD, 2023 WL 1442893, at *7 (N.D. Cal. Feb. 1, 2023) (rejecting assertion that subpoena

8   seeking identity of anonymous speaker circumvented the U.S.'s "pro-free speech policy," because

9   "First Amendment protections do not apply to non-citizens outside the territory of the United

10  States"); *Zuru*, 614 F. Supp. 3d at 707 ("Although the United States may have a pro-free-speech

11  policy, . . . it doesn't reflect a U.S. policy of protecting free speech around the world.").

12       In this case, there is nothing in the present record indicating the unidentified defendant in

13  the underlying South Korean civil action is entitled to First Amendment protections.  Further, the

14  plaintiff in the underlying proceeding alleges that the defendant knowingly made "false"

15  statements that caused the plaintiff to suffer "mental damage."  [Dkt. 1-2 at 10].  Taking the

16  plaintiff's allegations as true, the defendant's statements "likely would not be protected by the

17  First Amendment even in the United States." *Tagami*, 2021 WL 5322711, at *3 n.1; *see*

18  *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 22 (1990) (discussing the necessary balance between

19  ensuring "First Amendment protection for defendants in defamation actions" and recognizing

20  society's "pervasive and strong interest in preventing and redressing attacks upon reputation").

21  Accordingly, without prejudice to any argument that might be raised in a motion to quash or

22  modify the subpoena or any later evidentiary objections, the Court does not find that policies

23  related to the First Amendment (or any other policies of the United States) warrant *sua sponte*

24  denial of the USA's application at this stage of the proceedings.

25       The Court thus concludes that the third discretionary factor also weighs in favor of the

26  requested discovery.  *See Tagami*, 2021 WL 5322711, at *3 (finding the third discretionary factor

27  to weigh in favor of discovery where the requested discovery was limited to records for

28  identification purposes and there was no evidence that the applicant was attempting to circumvent

United States District Court
Northern District of California

13

foreign discovery rules or any policy of the United States); *In re Yasuda*, No. 19-mc-80156-TSH, 2020 WL 759404, at *5 (N.D. Cal. 5 (N.D. Cal. Feb. 14, 2020) (finding the third discretionary factor to weigh in favor of discovery where there was no evidence that the applicant was attempting to circumvent the foreign tribunal's proof-gathering restrictions).

### D. Unduly Intrusive or Burdensome Discovery Requests

The fourth discretionary factor asks the Court to consider whether the discovery request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information, and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (citing *In re Application of O2CNI Co.*, No. C 13-80125 CRB (LB), 2013 WL 5826730, at *15-16 (N.D. Cal. Oct. 29, 2013)). "The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure." *Varian Med. Sys.*, 2016 WL 1161568, at *5 (citing *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019 (9th Cir. 1994)). Under Federal Rule of Civil Procedure 26(a)(1), discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." "[U]nduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265.

Where, as here, a § 1782 application seeks discovery to identify an anonymous speaker, the fourth discretionary factor also considers, where applicable, the First Amendment's free speech guarantees and the potential chilling effect that granting the request would have on anonymous speech. *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-mc-80102-DMR, 2021 WL 4124216, at *3 (N.D. Cal. Sept. 9, 2021). "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011)

1   (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995)).

2          The Court finds that the fourth discretionary factor also weighs in favor of granting the

3   USA's application.  The application, made on behalf of the South Korean Court, seeks private user

4   information from Google in order to establish the identity of the defendant named in the civil

5   action pending before the Gunsan Branch of Jeonju District Court in the *Matter of Seongbeom* in

6   that court.  The requested information is necessary for resolving the issues at stake in the South

7   Korean action.  As already discussed, there is nothing in the record indicating that the anonymous

8   speaker is entitled to First Amendment protections.

9          Further, the scope of the proposed discovery is sufficiently confined to the name, gender,

10  phone number, and date of birth, for the individual(s) who used a specific Google email account

11  during a specific date range.  The Court finds that the request is not overbroad, unduly intrusive,

12  or burdensome.  *See, e.g.*, *hey*, 2023 WL 3874022, at *7 (holding subpoena seeking anonymous

13  speaker's identity from Twitter was not unduly intrusive or burdensome, where the § 1782

14  applicant identified the anonymous speaker with sufficient specificity, explained why discovery

15  was sought from Twitter, and demonstrated that Twitter likely had the identifying information in

16  its possession); *Seoul Cent. Dist. Ct.*, 2023 WL 2394545, at *4 (allowing discovery of information

17  from Meta regarding the names, dates of birth, email addresses, cell phone numbers, and IP

18  addresses associated with specific user accounts where the request was "narrowly tailored to

19  seeking the information that is necessary to identify the identity of the putative defendants"); *Assef*

20  *v. Does 1-10*, No. 15-cv-01960-MEJ, 2015 WL 3430241, at *2 (N.D. Cal. May 28, 2015)

21  (allowing discovery of documents sufficient to identify the names, addresses, telephone numbers,

22  and IP and email addresses of individuals or entities who created, owned, and operated a blog).

23         Accordingly, the Court finds that all four discretionary factors weigh in favor of granting

24  the instant *ex parte* application.  The fact that Google does not oppose the relief sought by the

25  USA in its application (subject to reservation of rights to object to the underlying subpoena)

26  further supports the exercise of discretion to grant the application.

27  **IV.    APPOINTMENT OF A PERSON UNDER § 1782 – A COMMISSIONER**

28         Whether or not to grant the USA's *ex parte* application does not end this Court's inquiry.

15

*United States District Court*
*Northern District of California*

In exercising its authority, the Court must also properly exercise its discretion in crafting the terms of the discovery being authorized.  The Court next addresses the USA's request to appoint AUSA Mainardi as Commissioner for purposes of issuing the subpoena for the authorized discovery. [Dkt. 1-1 at 1].

### A.    What Is a Commissioner or "Person" Appointed under § 1782

An order authorizing discovery under § 1782 "may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court."  28 U.S.C. § 1782(a).  While the statute as currently written does not use the terminology "Commissioner," the Court understands the USA's application to be requesting appointment of a "person" before whom the documents shall be produced in response to the subpoena.  Stahr, *Discovery*, 30 VA. J. INT'L L. 597, 600–01 (discussing the history of United States federal discovery procedures for foreign cases and how the term "Commissioner" was previously used in the statutory scheme).  Apparently, the "person appointed by the court" under the statute is often referred to by courts and legal scholars as a "commissioner."  *See, e.g.*, *Tokyo Dist. Prosecutor's Office*, 16 F.3d at 1019; Stahr, *Discovery*, 30 VA. J. INT'L L. 597, 631 ("A federal court may appoint a commissioner to assist in obtaining discovery under section 1782.").  The Court finds roots for this nomenclature in the history of the statute itself.

Historically, there have been two means by which to obtain evidence located in foreign jurisdictions: (1) letters rogatory; and (2) commissions.  Note, *Reciprocity in Execution of Letters Rogatory*, 58 YALE L. J. 1193 (1949); Stahr, *Discovery*, 39 VA. J. INT'L L. 597, 600 (observing that "English courts at the time of the American Revolution" recognized both "letters rogatory" and "commissions," and stating that "[e]arly United States courts were familiar with these devices"); *see Young v. U.S. Dep't of Justice*, 882 F.2d 633, 635 (2d Cir. 1989) (describing "requests for court-appointed commissioners" as one of the "ancient tools of international litigation").

A "letter rogatory" is a well-known type of "letter of request" for seeking international discovery assistance from one court addressed directly to another court in a different jurisdiction. *Intel*, 542 U.S. at 247 n.1; *see Tiedemann v. The Signe*, 37 F. Supp. 819, 820 (E.D. La. 1941) ("Letters rogatory are the medium, in effect, whereby one country, speaking through one of its

16

courts, requests another country acting through its own courts and by methods of court procedure peculiar thereto and entirely within the latter's control, to assist the administration of justice in the former country[.]"); *see* Fed. R. Civ. P. 28 advisory committee's note to 1993 amendment ("A letter rogatory is essentially a form of letter of request.").  With respect to letters rogatory, "the foreign court's normal procedures will be used in taking the testimony or evidence."  Stahr, *Discovery*, 39 VA. J. INT'L L. 597, 600 n.13.  The instant application resulted from a letter of request, but does not concern a letter rogatory addressed from the Korean Court directly to this Court.

By contrast, the basic alternative to a letter rogatory is a commission, whereby one court "commissions" an official to obtain evidence located within a foreign jurisdiction.  GARY B. BORN & PETER B. RUTLEDGE, INTERNATIONAL CIVIL LITIGATION IN UNITED STATES COURTS 1031 n.174 (Wolters Kluwer Law & Business, 5th ed. 2011) ("Commissioners are persons authorized by court order to preside over the taking of evidence in specified circumstances.").  There is a "broad distinction" between these two procedural devices.  Note, *Reciprocity*, 58 YALE L.J. 1193, 1194 n.2.  With respect to commissions, "the rules of procedure are established by the court issuing the commission, and are entirely under its control."  *Id.*

International judicial assistance by use of letters rogatory has been available in the United States by statute since the mid-nineteenth century.  David Rubinstein, *Judicial Assistance as Intended: Reconciling § 1782's Present Practice with its Past*, 123 COLUM. L. REV. 513, 518 (2023); *see Intel*, 542 U.S. at 247-49 (discussing the history of § 1782).  The original statute enacted by Congress in 1855, entitled "An Act to Prevent Mis-Trials in the District and Circuit Courts of the United States, in Certain Cases," authorized federal circuit courts upon receipt of foreign letters rogatory to appoint "a United States commissioner" to conduct the examination of witnesses, and empowered the commissioner "to compel the witnesses to appear and depose in the same manner" as in federal court:

> [W]here letters rogatory shall have [been] addressed from any court of a foreign country to any circuit court of the United States, and a United States commissioner designated by said circuit court to make the examination of witnesses in said letter mentioned, said

> commissioner shall be empowered to compel the witnesses to appear
> and depose in the same manner as to appear and testify in court.

Act of March 2, 1855, ch. 140, § 2, 10 Stat. 630.

However, apparently due to a series of clerical errors, the 1855 Act was omitted from the index of federal codes at the time, leaving federal courts largely unaware of its enactment.  Jenna M. Godfrey, *Americanization of Discovery: Why Statutory Interpretation Bars 28 U.S.C. § 1782(a)'s Application in Private International Arbitration Proceedings*, 60 AM. UNIV. L. REV. 475, 480 (2010); Harry Leroy Jones, *International Judicial Assistance: Procedural Chaos and a Program for Reform*, 62 YALE L. J. 515, 540 n.77 (1953) (noting that the 1855 Act was incorrectly "indexed in the Statutes at Large only under the heading 'Mistrials'").

In 1863, Congress enacted another statute authorizing discovery in aid of foreign litigation, entitled "An Act to facilitate the taking of Depositions within the United States, to be used in the Courts of other Countries, and for other Purposes."  Act of March 3, 1863, ch. 95, § 1, 12 Stat. 769; *In re Letter Rogatory from Justice Ct., Dist. of Montreal, Can.*, 523 F.2d 562, 564 (6th Cir. 1975).  Omitting the prior statute's language regarding the appointment of a "United States commissioner," the 1863 Act allowed a federal court, in response to letter rogatory or commission from a foreign court, to compel a United States witness to attend and provide testimony for the foreign case "before the officer named in such commission or letters rogatory," but only if: (1) the United States and the foreign country were "at peace"; (2) the foreign government was a party to, or had an "interest" in, the foreign case; and (3) the case was "for recovery of money or property." 121 F. Supp. 2d 209, 221-22.  Relying on the limits of the 1863 Act, United States district courts generally denied discovery for use abroad for the next eighty years or so.  Godfrey, *Americanization of Discovery*, 60 AM. UNIV. L. REV. 475, 481 & n.27 (collecting cases).

In the late 1940s, Congress apparently "rediscovered" the 1855 Act while reviewing and restating the federal judicial code.  Stahr, *Discovery*, 39 VA. J. INT'L L. 597, 602.  Prompted by the anticipated post-World War II growth in international commerce and litigation, Congress in its 1948 restatement adopted the "general" approach of the 1855 Act and rejected the "limitations" of the 1863 Act.  *Id.*; Jones, *International Judicial Assistance*, 62 YALE L. J. 515, 558 ("At the end of hostilities, the surge of 'international' litigation again pointed up the critical inadequacy of our

18

extraterritorial procedures."). The resulting 1948 Act, now codified as 28 U.S.C. § 1782, provided that the deposition of any witness within the United States for use in a qualifying foreign proceeding "may be taken by a *person* authorized to administer oaths designated by the district court of any district where the witness resides or may be found." Act of June 25, 1948, Pub. L. No. 80-773, § 1782, 62 Stat. 869, 949 (emphasis added). In subsequent amendments to § 1782, Congress continued to broaden the scope of assistance federal courts could provide to foreign tribunals. *See Intel*, 542 U.S. at 248-49 (discussing post-1948 amendments to the statute). The statutory language regarding the appointment of a "person" has remained more or less unchanged since 1948. *Id.*

## B.    The Scope of Authority of a "Person" or Commissioner under § 1782

Under § 1782, the "person" appointed to receive discovery (whether designated by the Court as "Commissioner" or not) has the inherent power "to administer any necessary oath and take the testimony or statement" sought. 28 U.S.C. § 1782(a); Hans Smit, *International Litigation Under the United States Code*, 65 COLUM. L. REV. 1015, 1027 (1965) ("[T]he person appointed need possess no power to administer oaths, since the appointment carries with it the power to administer any oaths that may be necessary."). The statutory language makes clear that all practices and procedures relating to the appointed "person" may be set by the Court (with the Federal Rules of Civil Procedure as the apparent default):

> The order [granting a § 1782 application] may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

The statute thus appears to contemplate that the "person" to be appointed would, first, be charged with taking testimony, and second, be charged with receiving the produced documents or things, both largely ministerial tasks. *See* Edward C. Weiner, *In Search of International Evidence: A Lawyer's Guide Through the United States Department of Justice*, 58 NOTRE DAME L. REV. 60, 66 (1982) ("The commissioner should subpoena the witness (or documents), inform him of the

19

nature of the proceedings, advise him of his rights to assert any applicable privilege which he may

have either under United States law or the laws of the foreign country involved, direct his attention

to any testimonial privilege or other rights which may be set forth in the letter of request,

propound the interrogatories, record the witness' answers, and certify the transcript or affidavit.");

*see also In re Letter of Request from Gov't of France*, 139 F.R.D. 588, 592 (S.D.N.Y. 1991)

(describing the individual appointed under § 1782 as "a mere conduit for evidence" with no

substantive "role" in the underlying foreign proceeding).

 Under § 1782, the Court's discretion to appoint a particular "person" to receive evidence

further includes the discretion to determine and set the bounds of the practices and procedures that

such "person" will follow.  28 U.S.C. § 1782(a) ("The order . . . *may* direct that . . . the document

or thing be produced[] before a person appointed by the court . . . . The order *may* prescribe the

practice and procedure . . . [for] producing the document or other thing.").  The statute does not

explicitly state whether the appointed "person" may exercise any discretion in carrying out their

duties under § 1782.  *See Sealed 1*, 235 F.3d at 1206 (noting that the language of § 1782 itself

provides no specific guidance to district courts regarding their own discretion under the statute).

Given that the appointed person's authority necessarily derives from the district court's

discretionary authority to appoint such person, it logically follows that the appointed person's own

discretionary authority, at minimum, cannot exceed that of the district court.  *See Young v. U.S.*

*Dep't of Justice*, No. 87 CIV. 8307 (JFK), 1988 WL 131302, at *5 (S.D.N.Y. Nov. 28, 1988)

("The United States Attorney's Office['s] . . . authority to obtain the records from Chemical did

not derive from its being a law enforcement agency.  Its authority derived solely from its

appointment by order of Judge Stewart."); Note, *Reciprocity*, 58 YALE L. J. 1193, 1194 n.2

("When a court commissions an individual to take a deposition it is, in effect, clothing that person

with *its* judicial authority.") (emphasis added); *but see Rep. of Haiti v. Crown Charters, Inc.*, 667

F. Supp. 839, 848 (S.D. Fla. 1987) ("Although the statute vests the commissioner with limited

judicial capacity such as the power to administer oaths, the commissioner's primary function is to

represent the interests of [the § 1782 applicant] in conducting the requested discovery.").

 Accordingly, the language of the district court's order granting the § 1782 application

United States District Court
Northern District of California

should determine the scope of the appointed person's power.  *In re Request for Jud. Assistance from Seoul Dist. Crim. Ct., Seoul, Kor.*, 428 F. Supp. 109, 112 (N.D. Cal. 1977) (holding appointed commissioner exceeded his authority by denying a § 1782 application, where the language of the district court's order appointing the commissioner suggested that the commissioner's "function was intended to be administrative only"), *aff'd*, 555 F.2d 720 (9th Cir. 1977); *In re Letter of Request from Local Ct. of Pforzheim, Div. AV, Fed. Rep. of Ger.*, 130 F.R.D. 363, 365-66 (E.D. Mich. 1989) ("The discretion of the district court itself is undisputed, and the scope of the derivative authority of the commissioner is fashioned by the order of the district court."); *see Crown Charters*, 667 F. Supp. at 848 (finding that the person appointed as commissioner has "wide latitude" in obtaining the evidence sought by the § 1782 applicant "because of [their] status as commissioner").

### C.  Whether Appointing a "Person" or Commissioner under § 1782 Is Appropriate

The fact that § 1782 *permits* the Court to appoint a commissioner (or other "person") does not mean that the Court *must* do so.  Indeed, federal district courts frequently authorize the issuance of subpoenas under § 1782 without naming a particular individual or entity to collect the evidence.  *See, e.g.*, *In re Alpine Partners, (BVI) LP*, 635 F. Supp. 3d 900 (N.D. Cal. 2022); *Med. Inc. Assoc. Smile Create*, 547 F. Supp. 3d 894 (N.D. Cal. 2021); *In re Niemela*, 2019 WL 13203948 (N.D. Cal. Sept. 12, 2019); *In re Tcherassi*, No. 23-MC-20342 SCOLA/GOODMAN, 2023 WL 2866429 (S.D. Fla. Feb. 6, 2023); *In re Sabag*, No. 1:19-mc-00084-JPH-TAB, 2022 WL 17687905 (S.D. Ind. Dec. 15, 2022); *In re Att'y Gen. of B.V.I.*, No. 1:21-mc-00768-JGK, 2021 WL 5361073 (S.D.N.Y. Oct. 29, 2021).

The circumstances under which a court *should* appoint a commissioner is an area of the law that remains relatively undeveloped.  Courts tend to appoint commissioners to receive evidence where the discovery request is made by, or on behalf of, a foreign government or tribunal.  Smit, *International Litigation*, 65 COLUM. L. REV. 1015, 1027 ("While the court is free to select any person it deems appropriate, it ordinarily should appoint the person designated by the foreign or international tribunal or by foreign law."); *see In re Sungrove Co.*, No. 22-mc-80225-JSC, 2022 WL 4468275, at *1 (N.D. Cal. Sept. 26, 2022) ("When it comes to requests directly

from foreign courts, district courts typically handle Section 1782 discovery requests in the context of an ex parte motion for an order appointing a commissioner.") (collecting cases).  Ensuring that evidence is received by an appointed Commissioner (or "person") may be influenced by the laws or practices of most foreign countries, particularly civil law jurisdictions, which place "great weight" on evidence being gathered by judicial authorities.  Weiner, *In Search of International Evidence*, 58 NOTRE DAME L. REV. 60, 65-66; *see* Smit, *International Litigation*, 65 COLUM. L. REV. 1015, 1027 n.74 ("Foreign courts and litigants frequently and understandably prefer to follow their own procedure in obtaining evidence.  Section 1782 permits them to follow this inclination and at the same time to benefit from American compulsion.").

Courts also tend to appoint commissioners where the evidence sought is particularly cumbersome or otherwise challenging to obtain.  *See, e.g.*, *In re Letter of Request for Jud. Assistance from the Tribunal Civil De Port-Au-Prince, Rep. of Haiti*, 669 F. Supp. 403, 407 (S.D. Fla. 1987) (confirming appointment of commissioner to assist Haitian *juge d'instruction* in collecting evidence for use in a sprawling investigation initiated by the Haitian government into "members of the former [Haitian] regime and the [former Haitian President-For-Life's] family" regarding "crimes ranging from corruption of public officials to embezzlement, and claims they transferred the tainted funds abroad"); *In re Application of Hill*, No. M19-117(RJH), 05CV999996, 2007 WL 1226141, at *1 (S.D.N.Y. Apr. 23, 2007) (confirming appointment of commissioner to obtain evidence in connection with "the largest corporate insolvency in the history of Hong Kong"); *In re Letter of Request from Amtsgericht Ingolstadt, Fed. Rep. of Ger.*, 82 F.3d 590, 591 (4th Cir. 1996) (confirming prior appointment of a commissioner to obtain blood sample evidence for use in a German paternity action); *see also* Stahr, *Discovery*, 30 VA. J. INT'L L. 597, 630 ("[I]f a foreign tribunal requests that a specific private person be appointed as commissioner to simplify the discovery process, that person will probably be appointed.").

### D.    Qualifications of a "Person" or Commissioner under § 1782

On its face, § 1782 has no express requirements as to who the appointed "person" should be.  This Court's own extensive review of the case law (both within this Circuit and without), as well as secondary sources, suggests the district court's discretion as to who to designate as a

Commissioner or "person" is at the most extreme limits of this Court's discretion. *See In re Letters of Request from Sup. Ct. of Hong Kong*, 821 F. Supp. 204, 211 (S.D.N.Y. 1993) ("Since the power of the commissioner comes from his appointment, any person who seems appropriate to the court may be appointed commissioner."); Brian Eric Bomstein & Julie M. Levitt, *Much Ado About 1782: A Look at Recent Problems with Discovery in the United States for Use in Foreign Litigation under 28 U.S.C. § 1782*, 20 U. MIAMI INTER-AM. L. REV. 429, 435 (1989) (concluding that federal district courts have "absolute discretion regarding the decisions of whether to appoint a commissioner, whom to select as the commissioner, and what procedures will be followed in the gathering of the evidence").

While a district court has wide discretion to grant discovery under § 1782, a court's exercise of its judicial discretion is not without limits. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 133 (2005) ("The fact that a § 1447(c) fee award is discretionary does not mean that there is no governing legal standard."). This Court must comply with the United States Constitution and adhere to any applicable controlling case law. *See Dream Palace v. Cnty. of Maricopa,*384 F.3d 990, 1006-07 (9th Cir. 2004). A federal district court "abuses its discretion" when it fails to apply the correct legal standard or bases its decision on unreasonable findings of fact. *Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)). The Court's exercise of its discretion must be rooted in the facts before it and guided by the judge's own logic, policy, and/or experience. *See Phillips v. Bradford*, 62 F.R.D. 681, 686 (S.D.N.Y. 1974) ("'Sound discretion' cannot elide considerations of logic, policy or experience."); *see also Pearce v. Comm'r of Internal Rev.*, 315 U.S. 543, 558 (1942) (Frankfurter, J., dissenting) ("In law as in life lines have to be drawn. But the fact that a line has to be drawn somewhere does not justify its being drawn anywhere. The line must follow some direction of policy, whether rooted in logic or experience. Lines should not be drawn simply for the sake of drawing lines."). As discussed above, the Court's exercise of discretion under § 1782 should be guided by the statute's "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252.

1   As a starting point for this analysis, the Court begins with the text of § 1782 itself. *United*

2   *States v. Nishiie*, 996 F.3d 1013, 1020 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2653, 212 L. Ed. 2d

3   609 (2022) ("'Statutory construction is a holistic endeavor, and, at a minimum, must account for a

4   statute's full text, language as well as punctuation, structure, and subject matter.' 'We begin, as we

5   must, with the text' of the [Statute]. Our 'review is guided by well-established rules of statutory

6   interpretation. We begin[ ] with the statutory text, and end[ ] there as well if the text is

7   unambiguous.'") (citations omitted).  The statute here has no express requirements or limitations

8   on (and thus on its face provides no guidance about) who a "person" to be appointed should be.

9   Based on this Court's research, it appears that neither the Supreme Court nor the Ninth Circuit

10   have provided interpretation of or guidance on who "a person" should be or what qualifications

11   they should have within the meaning of § 1782.

12   While § 1782 provides no express qualifications of the "person" to be appointed, the

13   statute does provide guidance on the characteristics of the type of person who should be appointed

14   based on their express and potential duties under the statute.  That is, a "person" to be appointed

15   should be expected to have the background, experience, skills, or qualities that would reasonably

16   lead the Court to conclude that such person would be reasonably competent in performing the

17   tasks and carrying out the duties of a Commissioner.  As particularly germane to the instant

18   matter, the statute contemplates that the appointed "person" should receive the produced

19   documents and things.  That duty requires, therefore, that the "person" should reasonably

20   understand the process for document production in discovery under the Federal Rules of Civil

21   Procedure, and thus should have skills, background, or experience sufficient to provide the Court

22   with reasonable confidence that they understand  document discovery, subpoenas, and receipt of

23   evidence in federal court litigation.

24   Similarly, as discussed, the statute grants the appointed "person" the power to administer

25   oaths, if testimony is to be received.  Therefore, a "person" appointed for that duty should,

26   reasonably, understand the process of administering oaths and thus have skills, background, or

27   experience sufficient to provide the Court with confidence that they understand the process of

28   administering oaths and taking testimony in federal court litigation.

United States District Court
Northern District of California

24

United States District Court
Northern District of California

With the statutory duties informing the Court as to the general characteristics of the type of "person" who would qualify as a Commissioner for appointment, precedent also provides some guidance on the types of persons found qualified to serve under § 1782.  Depending on the particular circumstances of the case, the appointed "person" may be an individual or may even be an entity.  *See, e.g.*, *Young*, 882 F.2d at 635 ("Private individuals may be appointed commissioners . . . but . . . foreign governments typically turn to law-enforcement authorities for help in criminal matters[.]"); *Tribunal Civil De Port-Au-Prince*, 669 F. Supp. at 407 (confirming prior appointment of a U.S. law firm, Strook & Strook & Lavan, as commissioner to obtain evidence for Haitian proceedings); *In re Application of Eurasian Bank Joint Stock Co. for Expedited Jud. Assistance Pursuant to 28 U.S.C. § 1782*, No. 3:15-mc-106-L-BN, 2015 WL 6438256, at *3 (N.D. Tex. Oct. 21, 2015) (appointing "Hudspeth Information Management LLC of Denton, Texas – or any other certified court reporter that [the § 1782 applicant's] counsel retains to record the depositions . . . to administer any necessary oath and take the testimony or statement required to be given at such depositions").

Although § 1782 references a singular "person," it is not uncommon for a federal district court to appoint multiple individuals or entities to receive evidence in a given case.  *See, e.g.*, *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 564 (9th Cir. 2011) (confirming prior appointment of "co-commissioners from the United States Attorney's office" to receive evidence); *In re Letter of Request from Sup. Ct. of Hong Kong*, 138 F.R.D. 27, 29 (S.D.N.Y. 1991) (confirming prior appointment of two individuals from the Hong Kong Attorney General's Office as "additional Commissioners" to receive evidence).

Indeed, it appears that one court has recognized that, because a § 1782 request is in aid of a foreign proceeding, the procedures in foreign tribunals may be instructive and thus further recognized that judicial officers in civil law jurisdictions normally undertake the process of obtaining evidence and not private attorneys.  *Sup. Ct. of Hong Kong*, 821 F. Supp. at 210 (citing *Aerospatiale*, 482 U.S. at 543) ("The process of obtaining evidence in a civil-law jurisdiction is normally conducted by a judicial officer rather than private attorneys.").  Accordingly, it appears that one possible approach is to appoint a United States Magistrate Judge or an Assistant United

25

States Attorney as a Commissioner or "person" under § 1782.  *See* Weiner, *In Search of International Evidence*, 58 NOTRE DAME L. REV. 60, 66 (asserting conclusorily that it is "usual" to appoint a Magistrate Judge or Assistant United States Attorney, without citing any authority, evidence, or source for this proposition).  Thus, in addition to a Magistrate Judge or Assistant U.S. Attorney, one secondary source suggests that the appointed "person" may be a court clerk, a private attorney, a court reporter, a non-U.S. consular official, or a non-U.S. judge.  McCarthy, *Proposed Uniform Standard*, 15 FORDHAM INT'L L. J. 772, 779 n.29; *see, e.g.*, *Seoul Dist. Crim. Ct.*, 428 F. Supp. 109 at 112 (confirming prior appointment of "Chief Magistrate Goldsmith" as commissioner under § 1782); *but see* 28 U.S.C. § 957 ("A clerk of a court or any of his deputies shall not be appointed a commissioner[,] . . . unless there are special reasons requiring such appointment[.]").

Where, as here, the request for discovery is made on behalf of a foreign tribunal in a civil law country under the Hague Evidence Convention, it is apparently common practice to appoint an Assistant United States Attorney as Commissioner.  *See, e.g.*, *19th Civil Ct.*, 2023 WL 420787, at *3 ("Courts in this district, and others within the Ninth Circuit, have appointed AUSAs as Commissioners and authorized them to obtain requested discovery.") (collecting cases).  In most civil law countries (such as the Republic of Korea), the taking of evidence from private parties falls within the province of the courts; when private parties act to secure evidence controlled by other private parties in a civil law nation without the participation or consent of the nation's authorities, the "judicial sovereignty" of the civil law country may be offended.  *Aerospatiale*, 482 U.S. at 555-58 (Blackmun, J., concurring in part and dissenting in part) (quoting 8 Int'l Legal Materials 785, 806 (1969)); *see also Sup. Ct. of Hong Kong*, 821 F. Supp. at 211 (Section 1782 "allows for the appointment of a Commissioner to preside over the taking of the evidence in order to make the evidence more admissible in the courts of the country requesting such" and "is a device to bridge the gap between international differences in civil and criminal procedure[.]").

**E.     Neutrality of a "Person" or Commissioner under § 1782**

Given the lack of definitional language in the statute itself, a few district courts in other circuits have concluded that the appointed "person" could be biased and need not be fully neutral

26

1    with respect to the underlying foreign proceedings.  *See, e.g.*, *Sup. Ct. of Hong Kong*, 821 F. Supp.

2    at 211 ("Even if . . . the Commissioner has a direct stake in the outcome of the case . . . that does

3    not disqualify the Commissioner under American law."); *Tribunal Civil de Port-Au-Prince*, 669 F.

4    Supp. at 407 (refusing to disqualify appointed commissioner who had "a personal interest in the

5    recovery of assets" in the underling foreign litigation).

6           On the other hand, in discussing such cases, at least one secondary source has recognized

7    the potential risks of serious misuse of the process if a person with a direct stake in the outcome is

8    appointed as Commissioner under § 1782.  Bomstein & Levitt, *Much Ado About 1782*, 20 U.

9    MIAMI INTER-AM. L. REV. 429, 265 (discussing decisions by some courts to allow individuals with

10   a direct stake in the outcome to be appointed commissioner).  Accordingly, "a way of preventing

11   this serious misuse of § 1782 [is that] the district court should avoid appointing as commissioner a

12   person with a current or potential 'interest' in the information discoverable pursuant to the district

13   court's order."  *Id.*

14          Because the statute directs that the Federal Rules of Civil Procedure should be followed

15   unless the Court orders otherwise, the qualifications of a Commissioner under the Federal Rules is

16   further instructive.  Notably, Federal Rule of Civil Procedure 28, entitled "Persons Before Whom

17   Depositions May Be Taken," provides that "[a] deposition may be taken in a foreign country . . .

18   before a person commissioned by the court to administer any necessary oaths and take testimony."

19   Fed. R. Civ. P. 28(b)(1)(D).  The Advisory Committee Notes to Rule 28 make clear that "the

20   appointment of a person by commission in itself confers power upon him to administer any

21   necessary oath."  Fed. R. Civ. P. 28 advisory committee's note to 1963 amendment.  Accordingly,

22   a "commissioner" appointed under Rule 28 appears to have substantially similar powers and

23   responsibilities as a "person" appointed under § 1782.  Given § 1782's express reference to the

24   Federal Rules, it is not unreasonable to analogize the appointment of a "person" under § 1782 to

25   the appointment of a "commissioner" under Rule 28.

26          A person appointed as "commissioner" under Rule 28 must be impartial.  *Raiser v. San

27   Diego Cnty.*, No. 19cv751-GPC(KSC), 2021 WL 118901, at *4 (S.D. Cal. Jan. 13, 2021) ("The

28   deposition officer has many important functions, one of which is to record the deposition in an

United States District Court
Northern District of California

27

1    impartial manner.").  To that end, the person designated as "commissioner" under Rule 28 cannot

2    be "any party's relative, employee, or attorney;" nor "anyone who is related to or employed by any

3    party's attorney;" nor anyone "who is financially interested in the action."  Fed. R. Civ. P. 28(c);

4    *see id.* (holding that plaintiff and defense counsel were "disqualified from acting as deposition

5    officers under Rule 28(c)"); *Miller v. Rufion*, No. 08-1233 BTM (WMc), 2010 WL 1883462, at *1

6    (E.D. Cal. May 10, 2010) ("A person who is an attorney for any of the parties may not administer

7    the oath.").  The person appointed as commissioner under Rule 28 must also "be in the same

8    place" as the witness who is being deposed.  *Krausz Indus., Ltd. v. Romac Indus., Inc.*, No. C10-

9    12-4RSL, 2011 WL 13100752, at *1 (W.D. Wash. Mar. 2, 2011) ("Courts have held that the word

10   'before' in Rule 28(b)(1)(C) and (D) requires that the witness and the person who administers the

11   oath be in the same place.").

12        Under the Federal Rules of Civil Procedure, the term "commissioner" was used in original

13   Rule 53 regarding the appointment of special masters.  Fed. R. Civ. P. 53, advisory committee's

14   notes to 1983 amendment.  After the creation of full-time magistrate judges, the advisory

15   committee's notes indicate that "the definition of 'master' in subdivision(s) now eliminates the

16   superseded office of commissioner."  *Id.*  Accordingly, a "Commissioner" under the Federal Rules

17   was historically a person who could have been appointed as Master.  It is therefore not

18   unreasonable to consider the issue of who to appoint as a "person" or Commissioner under § 1782

19   as analogous to procedures for appointing a Master under the Federal Rules, particularly since §

20   1782 expressly references the Federal Rules.

21        Under current Rule 53, the court may appoint a "master" in a civil case for certain limited

22   purposes: (1) to "perform duties consented to by the parties"; (2) to hold trial proceedings and

23   make findings of fact where warranted by "special circumstances"; or (3) to address any pretrial or

24   posttrial matters "that cannot be effectively and timely addressed by an available district judge or

25   magistrate judge of the district."  Fed. R. Civ. P. 53(a)(1).  As a baseline regarding a candidate

26   competent to serve as a Master, such person should have the sufficient skills, background, and

27   experience to provide the Court with reasonable confidence that they can perform their duties

28   objectively and impartially.  A person appointed as Master under Rule 53 is "obligated to be

United States District Court
Northern District of California

1    impartial and objective in the pursuit of their duties."  *Moore ex rel. Moore v. Tangipahoa Parish*

2    *Sch. Bd.*, 912 F.3d 247, 251 (5th Cir. 2018) ("The Board is correct that special masters are

3    obligated to be impartial and objective in the pursuit of their duties.") (citing *Newton v. Consol.*

4    *Gas Co. of N.Y.*, 259 U.S. 101, 105 (1922); Fed. R. Civ. P. 53(a)(2)).  That is, under Rule 53(a)(2),

5    no one can serve as a Master who has a relationship with "the parties, attorneys, action or court

6    that would require disqualification of a judge under 28 U.S.C. § 455."  Fed. R. Civ. P. 53(a)(2).  In

7    other words, a person should not be appointed as master if a reasonable layperson, who is aware of

8    all facts, would doubt the proposed master's impartiality.  *Liljeberg v. Health Servs. Acquisition*

9    *Corp.*, 486 U.S. 847, 860 (1988) (discussing the standard for judicial recusal under § 455(a)).

10           The Court is cognizant that a Commissioner or "person" appointed under § 1782 acts, in

11   some sense, as an officer or at least representative of the Court with respect to the discovery

12   sought.  Note, *Reciprocity*, 58 YALE L. J. at 1194 n.2 ("When a court commissions an individual to

13   take a deposition it is, in effect, clothing that person with *its* judicial authority.") (emphasis

14   added).  If such person were subject to the ethical rules of members of the bar of this jurisdiction

15   and subject to the disciplinary oversight of the rules and guidelines of this Court, that would be

16   another factor to further the Court's confidence to be placed in the person carrying out such role.

17   If a proposed Commissioner had previous experience in similar positions, such as appointment as

18   Master or Commissioner for a court in prior cases, that would also be another factor favoring

19   appointment of a candidate for such role.  *See Cruz v. Hauck*, 515 F.2d 322, 327 (5th Cir. 1975)

20   ("Under Rule 53, anyone, with certain exceptions not relevant here, may be appointed a master

21   who is 'well versed in the law and fit to perform the duties incumbent on one sitting in the place of

22   the court.'").

23           A person "who is related by affinity or consanguinity within the degree of first cousin to

24   any judge of the court" likewise should not be appointed as master.  *See* 28 U.S.C. § 458(a)(1)

25   ("No person shall be appointed to . . . any office or duty in any court who is related by affinity or

26   consanguinity within the degree of first cousin to any justice or judge of such court."); *see also*

27   *Farmers' Loan & Tr. Co. v. Iowa Water Co.*, 80 F.467, 469-70 (S.D. Iowa 1897).  Further, "[a]

28   clerk of a court or any of his deputies shall not be appointed as commissioner, master, referee or

United States District Court
Northern District of California

29

receiver in any case, unless there are special reasons requiring such appointment which are recited in the order of appointment."  28 U.S.C. § 957; *see United States v. Jacobs*, 187 F. Supp. 630, 640 (D. Md. 1959) (holding the appointment of a clerk of court as receiver to be proper "to save the expense of an outside receiver" where "the only duty required of the receiver [was] to endorse the check and deposit it in the Registry of the Court"), *aff'd*, 298 F.2d 469 (4th Cir. 1961).  But notably, "the mere fact that the person to be named as the master previously has employed someone who might appear before the master as a witness is not sufficient to disqualify the prospective appointee."  9C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2607 (3rd ed. 2023) (citing *United States v. 3,065.94 Acres of Land in Tulare, Cal.*, 187 F. Supp. 728, 733 (S.D. Cal. 1960); *Sup. Ct. of Hong Kong*, 821 F. Supp. 204)).

It is therefore reasonable to conclude that, as a minimum standard, a person appointed under § 1782 should be competent to perform their duties objectively and impartially, and thus not have a disqualifying relationship with the parties, attorneys, action, or court.  To the extent that a few district courts outside of this Circuit have held otherwise, this Court concludes instead that the better reasoned approach, within this Court's discretion, would be to appoint as a "person" under § 1782 a candidate who is free from bias or interest in the outcome of the underlying matter.  Such "person" should be free from grounds of disqualification in the matter as if they were a judge under 28 U.S.C. § 455, should not be a disqualified relative of the appointing judge under 28 U.S.C. § 458, and should generally not be a clerk of the court (or their deputies) absent special reasons under 28 U.S.C. § 957.

## F.    Applying These Standards to the Requested Appointment under § 1782 at Issue

In light the analysis herein, the Court concludes that the "person" appointed under § 1782 (whether titled "Commissioner" or not) should have the following minimum qualifications: sufficient skills, background, and/or experience to provide reasonable assurance to the Court that such person would competently understand and carry out the process of administering oaths and taking testimony; sufficient skills, background, and/or experience to provide reasonable assurance to the Court that such person would competently understand and carry out the receipt of evidence in compliance with the relevant processes for document production; and sufficient skills,

30

1    background, and/or experience to carry out such duties objectively and impartially, including

2    being free from a relationship with the parties, attorneys, action, or court that would require

3    disqualification if that person were a federal judge.  The Court further concludes that the "person"

4    appointed under § 1782 (whether titled "Commissioner" or not) should *ideally* have the following

5    qualifications: the absence of any substantial criminal record or history of sanctions or other such

6    discipline which might call into question that person's reliability or suitability for the appointment;

7    at least some prior experience as a commissioner or other neutral officer of the court or any other

8    relevant judicial or quasi-judicial experience; and the temperament, reputation, and good moral

9    character making such person suitable for appointment.

10        Applying these factors here, the USA requests that AUSA Mainardi be appointed as

11   Commissioner for purposes of the proposed subpoena.  [Dkt. 1-1 at 1].  AUSA Mainardi is not

12   counsel in the underlying Korean litigation, has no apparent interest in the outcome of the

13   underlying litigation or the information sought, appears to lack any motive to misuse the evidence

14   sought, is a licensed attorney and member of the bar of this Court with good standing, and has

15   experience litigating actions on behalf of the federal government in this District.  Considering the

16   totality of these circumstances, the Court concludes that AUSA Mainardi is an appropriate

17   "person" to serve as Commissioner for purposes of the requested subpoena.

18        Having determined that AUSA Mainardi should be appointed as Commissioner, the Court

19   next addresses the scope of the appointed Commissioner's authority.  The USA's application does

20   not seek authority beyond the requested subpoena.  *See generally* Dkts. 1, 1-1.  Thus, the

21   Commissioner is authorized to follow up with Google on the requested subpoena, take all

22   reasonably necessary steps to enforce the subpoena (or respond to/oppose any motion to quash or

23   modify), receive the documents and information produced in response to the subpoena (including

24   the verification from Google), send the documents and/or materials obtained from Google to the

25   South Korean Court (along with any additional verifications from the Commissioner which the

26   South Korean Court may request), and of course, communicate with Google, the relevant account

27   holder(s), this Court, and the South Korean Court on the progress of the subpoena.  The

28   Commissioner is further authorized to file any subsequent or supplemental requests to authorize

United States District Court
Northern District of California

31

issuance of any supplemental or additional subpoenas which the South Korean Court may request. The Commissioner may, if necessary, file a motion with this Court to seek authorization for any additional authority or other discovery under § 1782 relating to the underlying South Korean case. Beyond the reasonable scope so authorized, the Commissioner's scope of authority is limited to the above—in particular, the Commissioner is *not* authorized to disclose or share the documents/information produced by Google to any third parties unrelated to this matter.

## V.   THE PROPOSED SUBPOENA

Under § 1782, the Court has discretion to "prescribe the practice and procedure . . . for taking the testimony or statement or producing the document or other thing." 28 U.S.C. § 1782(a). The practice or procedure "may be in whole or part the practice and procedure of the foreign country or the international tribunal." Id.  Unless otherwise ordered by the Court, "the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." Id.

Here, the USA's application seeks issuance of a subpoena for certain "information and documents." [Dkt. 1-1 at 2].  The proposed subpoena attached to the application makes repeated reference to the procedures for production of documents under Federal Rule of Civil Procedure 45. *See* Dkt. 1-2 at 21-22.  Accordingly, the Court determines that the discovery authorized herein shall be taken and produced in accordance with the Federal Rules of Civil Procedure, and in particular, Rules 26 and 45.  Under Rule 26(a)(1), discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Rule 45 requires a subpoena to "command each person to whom it is directed" to produce documents "at a specified time and place." Fed. R. Civ. P. 45(a)(1)(A)(iii).  The place of compliance for production of documents must "at a place within 100 miles of where the [subpoenaed] person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A).  "Although Rule 45(a)(1)(A)(iii) permits the subpoena to direct a place of

United States District Court
Northern District of California

United States District Court
Northern District of California

1    compliance, that place must be selected under Rule 45(c)."  Fed. R. Civ. P. 45 advisory

2    committee's notes to 2013 amendment, subsection (c).

3           The USA's application here requests that Google be ordered to send the subpoenaed

4    materials directly (and apparently at Google's cost) to the South Korean Court in Seoul, Republic

5    of Korea, along with a verification.  [Dkt. 1-1 at 2; Dkt. 1-3 at ¶¶ 3-4].  However, the proposed

6    subpoena attached to the application, which appears to be a standardized form, does not specify a

7    place of compliance—the space on the form was simply left blank.  *See* Dkt. 1-2 at 21.  A

8    subpoena that does not specify all information required by Rule 45(a)(1)(A)(ii), including the

9    place of compliance, is facially invalid.  *See Black v. Wrigley*, No. 18-cv-2367 GPC-BGS, 2019

10   WL 1877070, at *4 (S.D. Cal. Apr. 26, 2019) (quashing subpoena that did not specify the "date

11   and time" for production); *WH Holdings, LLC v. Ace Am. Ins. Co.*, No. 09C7133, 2010 WL

12   3732149, at *5 (N.D. Ill. Sept. 17, 2010) ("The failure of the subpoena served upon Buck to

13   identify the Court from which it purportedly issued renders it facially invalid under Federal Rule

14   of Civil Procedure 45(a)(1)(A)(iii).  The rule is phrased in mandatory terms, and does not provide

15   for any exceptions.").

16          To the extent that the USA's proposed subpoena seeks to command Google—from its

17   headquarters in Mountain View, California—to produce documents to a foreign tribunal located in

18   Seoul, Republic of Korea, the place of compliance is not "within 100 miles" of the subpoenaed

19   person's location, as is required by Rule 45(c)(2)(A).[1]  *See Agincourt Gaming, LLC v. Zynga, Inc.*,

20   No. 2:14-cv-0708-RFB-NJK, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014) ("Rule 45 makes

21   clear that the place of compliance is tethered to the location of the subpoenaed person."); Fed. R.

22   Civ. P. 45(d)(3)(A)(ii) (providing that a subpoena requiring compliance "beyond the geographical

23   limits specified in Rule 45(c)" should be quashed or modified); *Williams v. Camden USA Inc.*, No.

24   3:19-cv-691-AJB-AHG, 2021 WL 5417516, at *1 (S.D. Cal. Nov. 19, 2021) ("A subpoena

25

26   _____

27   [1] The Court takes judicial notice of the geographical distance between Google's address in Mountain
     View and the South Korean Court's address in Seoul.  *See United States v. Perea-Rey*, 680 F.3d
     1179, 1182 n.1 (9th Cir. 2012) ("We take judicial notice of a Google map and satellite image as a

28   'source[] whose accuracy cannot reasonably be questioned,' at least for the purpose of determining
     the general location of the home.") (quoting Fed. R. Evid. 201(b)).

1   requiring a nonparty to produce documents at a place more than one-hundred miles away is

2   invalid."); *Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823, at *3 (C.D. Cal.

3   July 7, 2017) (quashing a subpoena commanding third party to produce documents in a location

4   that was not within 100 miles of where the third party was located or transacted business).

5         That Google's production of the subpoenaed documents to the South Korean Court might

6   occur via electronic means or through the mail, rather than at a physical location in Korea, does

7   not obviate the requirement that the subpoena must comply with the 100-mile radius rule.  *See*

8   *Uniloc USA, Inc. v. Apple Inc.*, No. 19-cv-01692-EJD (VKD), 2020 WL 6262349, at *2 (N.D. Cal.

9   Oct. 23, 2020) ("While noting in Rule 45(c) prevents parties from arranging to produce documents

10  by electronic means rather than at a physical location, a subpoena that purports to compel

11  production beyond the geographical limits specified in Rule 45(c) does not comply with the

12  requirements of the Rule.").  Were it otherwise, a party could simply request the issuance of a

13  subpoena for documents from any federal district court within the United States commanding the

14  subpoenaed party to mail (or email) the documents from a mailbox (or computer) located within

15  that district.  Under such circumstances, "the court for the district where compliance is required"

16  would always be the same court that issues the subpoena.  Given that Rule 45 contemplates a

17  division of jurisdiction between courts that may issue subpoenas and courts that may hear

18  challenges to subpoenas, it is clear that the two courts are not always the same court.  *Compare*

19  Fed. R. Civ. P. 45(a)(1)(D)(2) ("A subpoena must issue from the court where the action is

20  pending."), *with* Fed. R. Civ. P. 45(d)(3)(A)(ii) ("On timely motion, the court for the district

21  where compliance is required must quash or modify a subpoena that . . . requires a person to

22  comply beyond the geographical limits specified in Rule 45(c)"); *see also Russell v. Maman*, No.

23  18-cv-06691-RS(AGT), 2021 WL 3212646, at *1 (N.D. Cal. July 29, 2021) ("The sole subpoena

24  at issue here commands Walsh, who resides in Chappaqua, New York, to appear for a remote

25  deposition by Zoom.  Though this Court issued that subpoena, there is no indication that

26  compliance is (or could be) required in this District[.] . . . Accordingly, the Court lacks jurisdiction

27  to enforce the subpoena[.]").

28         Further, as it appears that civil law jurisdictions (such as the Republic of Korea) may

United States District Court
Northern District of California

34

United States District Court
Northern District of California

require or at least prefer that evidence be received by a judicial officer (which is apparently one of the reasons that the appointment of a Commissioner was sought in this case), it makes more sense and comports with notions of comity for the international proceedings involved to require that the Commissioner directly receive the subpoenaed materials from Google, and then the Commissioner in turn will send those materials to the foreign tribunal.  This is why the Court's July 3rd Order does not grant the application's request that Google send the subpoenaed materials directly to the South Korean Court.  However, the Court notes that the Commissioner and Google remain free to negotiate and reach agreement on alternative procedures for the logistics for Google's production, should they desire.  To the extent the July 3rd Order did not expressly instruct the Parties, by this Memorandum the Court instructs the Parties to reasonably discuss edits to the subpoena consistent with the discussion herein, a timeline and procedure for the Commissioner to issue the edited subpoena, for Google to respond, for the Parties to reasonably attempt to resolve any disputes as to the subpoena, and assuming the documents or information are produced by Google, for the Commissioner to receive the produced materials from Google.  Further, the Parties are instructed to confer on a reasonable process for the Commissioner to send the received materials to the South Korean Court.

The USA's application also requested that Google "provide a copy of the subpoena to the relevant account holder(s)" and give them an opportunity to object and/or file a motion to quash or modify the subpoena.  [Dkt. 1-3 at 2 ¶ 3].  Given that the subpoena requests personally identifying information from an otherwise anonymous speaker (or speakers), the Court finds it appropriate to grant this request.  *See Tagami*, 2021 WL 5322711, at *4 (requiring Google provide advance notice to account holders of subpoena requesting their personally identifying information that "intrudes upon [their] privacy interests"); *In re Adams*, No. 21-mc-80011-VKD, 2021 WL 275478, at *4 (N.D. Cal. Jan. 27, 2021) ("[W]here a proposed subpoena would require Google to disclose identifying information of an account holder, the Court's usual practice is to require Google to give advance notice to the account holder and to allow the account holder an opportunity to object to the disclosure."); *Kardas v. Astas Holdings A.S.*, No. 19-mc-80174-VKD, 2019 WL 3365636, at *3 (N.D. Cal. July 25, 2019) ("The United States proposes to require

35

1    Google to 'provide notice of the subpoena to the relevant users of the subject YouTube accounts

2    and afford them the opportunity to file an objection or motion to quash.'  Such notice is

3    appropriate, as such account holders are likely to have an interest in the information that is subject

4    to the subpoena.") (internal citation omitted).

5            The USA represents that "Google does not object to the entry of the proposed order

6    accompanying the § 1782 application but reserves all rights and objections in responding to the

7    underlying subpoena."  [Dkt. 1 at 1].  Whether or not there is any dispute or issue with regards to

8    the merits of the subpoena is not before the Court at this time.  The proposed order accompanying

9    the application sensibly set a deadline for Google to quash or modify the subpoena.  [Dkt. 1-3 at

10   2].  That deadline has not yet passed as of the date of this Memorandum.  As noted in the July 3rd

11   Order, the Commissioner and Google are reminded of their mutual obligation to be familiar with

12   and comply with this Court's Standing Order on Discovery in Civil Actions, particularly the

13   procedures for discovery dispute resolution.

14           The July 3rd Order set a deadline by which the Parties must report to this Court on the

15   completion of the subpoena process.  Discovery takes place between the Parties and without direct

16   judicial oversight.  A status report is thus necessary for the Court to be apprised on whether and

17   when this matter can be deemed completed.  *See* Fed. R. Civ. P. 1 (The Federal Rules of Civil

18   Procedure "should be construed, administered, and employed by the court and the parties to secure

19   the just, speedy, and inexpensive determination of every action and proceeding."); *Yourish v. Cal.*

20   *Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (noting "the public's interest in expeditious

21   resolution of litigation").

22                                        **CONCLUSION**

23           Having considered all relevant factors and legal requirements, the Court finds that, in its

24   discretion, granting the USA's § 1782 application is appropriate in this case.  Accordingly, subject

25   to and as set forth in the Court's Order dated July 3, 2023, and as discussed further herein, the

26   USA's *ex parte* application for authorization under 28 U.S.C. § 1782 to issue a proper subpoena to

27   Google is hereby **GRANTED**.  Further, the Court **ORDERS** the appointment of AUSA Mainardi

28   as Commissioner for purposes of the subpoenas consistent with and with authority as set forth and

United States District Court
Northern District of California

1  limited herein.  The Parties shall undertake the subpoena process approved in a manner consistent

2  with this Memorandum and the July 3rd Order.

3       **IT IS SO ORDERED.**

4  Dated: September 5, 2023.

5

6       PETER H. KANG
     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California